UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------
NANCY VELASQUEZ,

                           Plaintiff,

            - against -                                          **MEMORANDUM & ORDER**
                                                                        21-CV-0892 (PKC)

COMMISSIONER OF SOCIAL SECURITY,

                           Defendant.
--------------------------------------------------------

PAMELA K. CHEN, United States District Judge:

Plaintiff Nancy Velasquez ("Plaintiff") filed this action pursuant to 42 U.S.C. § 405(g) to challenge an adverse determination by the Social Security Administration ("SSA"), which denied Plaintiff benefits. After Plaintiff filed a motion for judgment on the pleadings, the parties stipulated to remand the case to the SSA; the Court granted Plaintiff's motion and remanded to the SSA, where Plaintiff was awarded $110,560 in past-due benefits. (Olinsky Aff., Dkt. 24-1, ¶ 4.) Plaintiff's counsel, Howard D. Olinsky ("Olinsky"), now moves for $12,640 in attorney's fees pursuant to 42 U.S.C. § 406(b). (*Id.* at ¶ 7.) For the reasons explained below, Olinsky's motion is granted, and he is awarded $12,640. Upon receipt of this award from the government, Olinsky shall promptly refund Plaintiff $5,529.84, which represents the Equal Access to Justice Act ("EAJA") fees already received by counsel. (6/7/2022 Docket Order.)

## BACKGROUND

After Plaintiff was denied benefits at the agency level, Plaintiff retained Olinsky and filed this action on February 19, 2021. (Compl., Dkt. 1.) After Plaintiff filed a motion for judgment on the pleadings, (Mot. J. Pleadings, Dkt. 16), the parties stipulated to remand the case to the SSA, (Joint Mot. Remand, Dkt. 19), and the Court granted the joint motion to remand to the SSA, (3/16/2022 Docket Order). The Court then awarded Plaintiff $5,547.42 in attorney's fees and

expenses[1] pursuant to the EAJA, 28 U.S.C. § 2412(d).  (6/7/2022 Docket Order.)  On July 5, 2023, the SSA mailed Plaintiff a Notice of Award letter informing her that she would receive approximately $110,560 in past-due benefits, with 25% ($27,640) withheld as possible fees for her attorney.  (Award Notice, Dkt. 24-3, at ECF[2] 6.[3])  By motion filed on September 13, 2024, Olinsky now seeks $12,640 for work performed before this Court.  (Olinsky Aff., Dkt. 24-1, ¶ 7.)

Along with his motion, Olinsky submitted a fee agreement demonstrating that Plaintiff retained Olinsky on a 25% contingency-fee basis, (Fee Agreement, Dkt. 24-2), and itemized time records indicating that a total of 29.4 hours were spent litigating this matter before this Court, (Olinsky Timesheet, Dkt. 24-4).  Olinsky requests $12,640 for 29.4 hours of work, 22 hours of which was attorney time and 7.4 hours of which was paralegal time.  (Olinsky Aff., Dkt. 24-1, ¶ 9.)  If the paralegal time was billed at $100 per hour, this would be an effective hourly rate of $540.91 for attorney work.  (*Id.*)

## DISCUSSION

### I.    Timeliness

Motions for attorney's fees under 42 U.S.C. § 406(b) must be filed within the 14-day filing period proscribed by Rule 54(d) of the Federal Rules of Civil Procedure.  *Sinkler v. Berryhill*, 932 F.3d 83, 91 (2d Cir. 2019).  The 14-day period begins to run from when "counsel receives notice of the benefits award," and the law presumes that "a party receives communications three days

---

[1] This $5,547.42 award included $17.58 in expenses.  (*See* Expenses, Dkt. 22-7.) Accordingly, Olinsky received $5,529.84 in attorney's fees subject to the EAJA.

[2] Citations to "ECF" refer to the pagination generated by the Court's CM/ECF docketing system and not the document's internal pagination.

[3] The letter does not state the exact amount of past-due benefits awarded, but notes that the SSA "usually" withholds 25% for potential attorney's fees and, in this case, was withholding $27,640.  (Award Notice, Dkt. 24-3, at ECF 6.)

after mailing." *Id.* at 87–89 & n.5.  Furthermore, because Rule 54(d) allows judges to extend the 14-day deadline by court order, "district courts are empowered to enlarge that filing period where circumstances warrant." *Id.* at 89.

The notice of award letter is dated July 5, 2023, and the present motion was filed on September 13, 2024—one year and 70 days after the notice of award date.  (Olinsky Aff., Dkt. 24-1, ¶ 4.)  Olinsky claims that he did not receive notice of the award letter until September 13, 2024, (*id.*)—the same day Olinsky's motion was filed—and attaches email communications to that effect, (Award Notice, Dkt. 24-3, at ECF 2–3).  "This Court and others have concluded that 'starting the 14-day period when *counsel* receives notice of the benefit award is more consistent with *Sinkler*'s logic, because until counsel receives notice of the award, the amount of the award remains as-yet-unknown to the relevant party filing the § 406(b) motion.'"  *Hanlon v. Comm'r of Soc. Sec.*, No. 18-CV-7090 (PKC), 2022 WL 103640, at *2 (E.D.N.Y. Jan. 11, 2022) (quoting *Williams v. Comm'r of Soc. Sec.*, No. 18-CV-4734 (PKC), 2021 WL 4480536, at *2 (E.D.N.Y. Sept. 30, 2021) (quotation marks omitted)).  "Indeed, starting the clock when plaintiffs receive notice would seem inequitable, depriving counsel of fees to which they are entitled through no fault of their own, and creating a perverse incentive for plaintiffs to conceal that they had received notice of benefits in order to avoid paying their attorneys and thereby keep the entirety of their awards for themselves." *Id.*  The Court accordingly finds that the clock began to run on September 13, 2024, and that Olinsky's motion was timely filed.

## II.    Reasonableness of the Requested Fee

### A.    Legal Standard

Section 406(b) of the Social Security Act provides that a court may award a "reasonable fee . . . not in excess of 25 percent of the total of the past-due benefits to which the claimant is

entitled." 42 U.S.C. § 406(b)(1)(A).  If the contingency percentage is within the 25% cap, and there is no evidence of fraud or overreaching in making the agreement, a district court should test the agreement for reasonableness.  *Fields v. Kijakazi*, 24 F.4th 845, 853 (2d Cir. 2022).

To determine whether a fee is reasonable, a district court should consider (1) the character of the representation and the results the representative achieved; (2) whether counsel was responsible for a delay, unjustly allowing counsel to obtain a percentage of additional past-due benefits;[4] and (3) whether the requested amount is so large in comparison to the time that counsel spent on the case as to be a windfall to the attorney.  *Id.* at 849 & n.2, 853.

With respect to whether a fee would be a "windfall," in *Fields* the Second Circuit emphasized that "the windfall factor does *not* constitute a way of reintroducing the lodestar method and, in doing so, . . . indicate[d] the limits of the windfall factor."  *Id.* at 854.  Rather, "courts must consider more than the de facto hourly rate" because "even a relatively high hourly rate may be perfectly reasonable, and not a windfall, in the context of any given case."  *Id.*  The Second Circuit instructed courts to consider (1) "the ability and expertise of the lawyers and whether they were particularly efficient, accomplishing in a relatively short amount of time what less specialized or less well-trained lawyers might take far longer to do"; (2) "the nature and length of the professional relationship with the claimant—including any representation at the agency level"; (3) "the satisfaction of the disabled claimant"; and (4) "how uncertain it was that the case would result in an award of benefits and the effort it took to achieve that result."  *Id.* at 854–55.  Ultimately, a

---

[4] This is because the amount of benefits a successful plaintiff receives is calculated from the date of onset up to the date the SSA awards benefits on remand.  *See Fields*, 24 F.4th at 849 n.4 ("Undue delay can be a particular problem in cases like these, in which past-due benefits are at stake.  Because delay increases the size of a plaintiff's recovery, it may also increase disproportionately a lawyer's contingent fee recovery.  [W]here the attorney is responsible for delay, the attorney should not be allowed to profit from the accumulation of benefits during the pendency of the case in court." (cleaned up)).

district court may reduce the amount called for in the contingency fee agreement "only when [the court] finds the amount to be unreasonable," after considering the factors outlined above. *Id.* at 852–53.

In addition, if fee awards are made to a claimant's attorney under both the EAJA and § 406(b), the attorney must refund the claimant the amount of the smaller fee. *Gisbrecht v. Barnhart*, 535 U.S. 789, 796 (2002); *Wells v. Bowen*, 855 F.2d 37, 48 (2d Cir. 1988) ("Once appropriate fees under 42 U.S.C. § 406(b) are calculated, the district court should order [the attorney] to return the lesser of either that amount or the EAJA award to his clients."); *Barbour v. Colvin*, No. 12-CV-548 (ADS), 2014 WL 7180445, at *2 (E.D.N.Y. Dec. 10, 2014) (citing *Porter v. Comm'r of Soc. Sec.*, No. 06-CV-1150 (GHL), 2009 WL 2045688, at *4 (N.D.N.Y. July 10, 2009)).

### B.    Application

Here, Plaintiff retained Olinsky pursuant to a 25% contingency-fee agreement.   (Fee Agreement, Dkt. 24-2.)   There are no allegations of fraud or overreaching with respect to the retainer agreement.  Olinsky does not seek the full 25% of Plaintiff's past-due benefit, *i.e.*, $27,640, and instead seeks only $12,640.  (Olinsky Aff., Dkt. 24-1, ¶¶ 5, 7.)  As discussed, 29.4 hours of work, comprised of 22 hours of attorney time and 7.4 hours of paralegal time billed at $100 per hour, would result in an effective hourly rate of $540.91 for attorney work.  *See Long v. Comm'r of Soc. Sec.*, No. 18-CV-1146 (PKC), 2020 WL 6545904, at *3 (E.D.N.Y Nov. 6, 2020) (deducting paralegal work at the rate of $100 per hour to calculate the effective hourly attorney rate).  For the reasons explained below, the Court finds that amount to be reasonable in the context of this case.

To determine reasonableness, the Court considers "the character of the representation and the result the representative achieved." *Fields*, 24 F.4th at 849.  The fee here is in line with the

character of the representation and the results achieved. Olinsky was able to secure a joint stipulation to remand and successfully obtained benefits from the SSA following further proceedings. (Joint Mot. Remand, Dkt. 19; Olinsky Aff., Dkt. 24-1, ¶ 8.) As such, no downward adjustment is required by this factor.

Second, the Court must determine whether counsel was responsible for unreasonable delays. *Fields*, 24 F.4th at 849. There were no undue delays in the litigation before this Court. While Olinsky obtained a 60-day extension to file Plaintiff's motion for judgment on the pleadings, (11/17/2021 Docket Order), there is no reason to believe that this was due to a lack of due diligence on Olinsky's behalf. *See Rivera v. Comm'r of Soc. Sec.*, No. 20-CV-8444 (AEK), 2024 WL 4764481, at *3 (S.D.N.Y. Nov. 13, 2024) (finding Olinsky's request for a 60-day extension did not warrant a downward adjustment). Indeed, the result he was able to secure suggests the opposite. The Court finds that this factor does not warrant a downward adjustment.

The third consideration with respect to reasonableness is whether the requested amount constitutes a "windfall." *Fields*, 24 F.4th at 849. The Court analyzes four factors in determining whether a requested amount qualifies as a windfall. *Id.* at 854–56.

First, with respect to "the ability and expertise of the lawyers and whether they were particularly efficient," *id.* at 854, the Court believes that 29.4 hours was a reasonable amount of time to spend in this matter. In *Fields*, the Second Circuit found that 25.8 hours reviewing an 863-page transcript, drafting a 19-page brief, and then obtaining a stipulation of dismissal demonstrated particular efficiency, and that "other lawyers might reasonably have taken twice as much time" to do the same work, justifying a *de facto* hourly rate of $1,556.98. *Id.* Here, the transcript was 967 pages, (Administrative Tr., Dkt. 12), the brief in support of Plaintiff's motion for judgment on the pleadings was 15 pages, (Pl.'s Mem., Dkt. 17), and Plaintiff's counsel was not required to draft a

reply brief.  Plaintiff's counsel also obtained a stipulation of remand.  (Joint Mot. Remand, Dkt. 19).  22 hours of total attorney time was spent on these tasks, as well as others undertaken in support of Plaintiff's case.  (Olinsky Aff., Dkt. 24-1, ¶ 9.)  As to "the ability and expertise" of Olinsky, "Mr. Olinsky has focused his practice on Social Security disability law for over 30 years, and his firm has handled over 6,000 Social Security appeals in federal courts."  *Rivera*, 2024 WL 4764481, at *3.  Given that the transcript and briefing here are of similar length to those in *Fields*, the Court finds that the amount of attorney time spent on this matter was reasonable and that this factor does not warrant a downward adjustment.

Second, with respect to "the nature and length of the professional relationship with the claimant—including any representation at the agency level," *Fields*, 24 F.4th at 855, the Court notes that Olinsky did not represent Plaintiff in front of the SSA before filing this suit.  In *Fields*, the plaintiff's counsel had represented the plaintiff from the start of his agency proceedings, including four separate hearings before Administrative Law Judges and multiple petitions to the SSA Appeals Council, further enabling the plaintiff's counsel to efficiently brief its arguments before the district court, and distinguishing the case from some other cases that had found a windfall.  *See id.* at 855.  Here, Olinsky was not retained until after the conclusion of the administrative process, (Fee Agreement, Dkt. 24-2, at ECF 2), and therefore it is reasonable that it might have taken Olinsky longer than the attorney in *Fields* to review the underlying record.  *See Daniels v. Comm'r of Soc. Sec.*, No. 20-CV-0430 (PKC), 2022 WL 2918236, at *3 (E.D.N.Y. July 25, 2022).  Thus, this factor does not warrant a downward adjustment.

Third, with respect to the "satisfaction of the disabled claimant," *Fields*, 24 F.4th at 855, the Court notes that Olinsky obtained the desired result, assisting Plaintiff in recovering substantial past payments to which she was entitled and future payments.  There is no evidence in the record

that Plaintiff was dissatisfied with Olinsky's performance. A downward departure is not warranted based on client dissatisfaction.

Lastly, as to "how uncertain it was that the case would result in an award of benefits and the effort it took to achieve that result," *id.*, the Court notes that this case was not as uncertain as *Fields*. In *Fields*, the SSA denied the claim again even after remand, so it was a very close case. *Id.* at 850. Here, while the SSA initially rejected the claim, it stipulated to a remand after the initial briefing, (*see* Joint Mot. Remand, Dkt. 19), indicating that this case was far less uncertain than the underlying case in *Fields* and did not require the sustained effort of multiple rounds of representation in federal court by Olinsky to achieve a positive result. But when assessed against the Court's determinations regarding the first through third factors, the Court finds no downward adjustment necessary based on this factor either.

For the reasons explained above, the Court finds the requested amount to be reasonable and awards Olinsky $12,640. Upon receiving the § 406(b) award, Olinsky must remit the $5,529.84 he received pursuant to the EAJA to Plaintiff.

## CONCLUSION

For the reasons explained above, the pending motion for attorney's fees under 42 U.S.C. § 406(b) is granted, and Olinsky is awarded $12,640. Upon receipt of this award from the government, Olinsky shall promptly refund Plaintiff $5,529.84, which represents the EAJA fees already received by counsel. The case remains closed.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: April 30, 2025
        Brooklyn, New York

8